## B. C. GRAYSON V. THE STATE.

No. 10622. Delivered March 2, 1927.

**1.—Murder—Argument of Counsel—Bills of Exception—Incomplete.**

Where appellant complains in two bills of exception of remarks of State's Attorney in his argument, which were improper, but his bills fail to show that the statements were gratuitous, and were not invited nor based on the evidence, the presumption must be indulged that the court would have sustained an objection to such argument, and reprimanded the counsel.

**2.—Same—Charge of Court—Rewriting Same—Not Improper.**

Where, in response to exceptions and requested charges of appellant, the trial court rewrote his entire charge, and no exceptions were taken to the charge as rewritten or that counsel was not afforded the opportunity required by statute to examine it, no error is shown.

**3.—Same—Principal Offenders—Properly Submitted in Charge.**

Where, on a trial for murder, the evidence disclosed that appellant attacked deceased and cut him twice with a knife, and while the difficulty was in progress, appellant's son ran up and shot deceased with a shotgun, killing him instantly, and other evidence clearly raised the issue of an acting together by appellant and his son, there was no error in charging on the law of principals, and in refusing to charge the jury to acquit the appellant unless the death of deceased resulted from the knife wounds inflicted by appellant.

Appeal from the District Court of Polk County. Tried below before the Hon. J. L. Manry, Judge.

Appeal from a conviction of murder, penalty life imprisonment in the penitentiary.

The opinion states the case.

*C. Bethea* and *P. R. Rowe, Jr.* of Livingston, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder, punishment fixed at confinement in the penitentiary for life.

Appellant, in his brief, makes, a statement of the facts in substance as follows: "The defendant placed no witnesses on the stand, and the testimony in the case is entirely that of state witnesses. The testimony shows that on or about the 13th day of January, 1926, the deceased, Will Evans, operated a sawmill, and that the defendant, B. C. Grayson, and his son, Masterson Grayson, lived about three miles from the mill. The trouble which ended in the death of Will Evans began when the defendant approached him at his mill and engaged him in a fight. The defendant stabbed the deceased with a knife in the shoulder twice. The deceased thereupon knocked the defendant down with a long-handled shovel. At that moment, Masterson Grayson, the son of the defendant, ran into the mill, holloed 'Look out' three times and shot the deceased in his left breast with a shotgun, and the deceased died within a few minutes. The defendant and his son left the mill together. The testimony of the doctors tend to show that the knife wounds might have caused the death of the deceased. All the testimony shows that the gunshot produced a hole about two inches in diameter."

Bills of exceptions Nos. 1 and 2 reflect the complaint of the remarks of counsel for the state wherein he said:

"I have been implored by the widow and brothers of this murdered man to see that this defendant gets what he is entitled."

It is obvious that the communication between counsel for the state and the relatives of the deceased is a matter that he could not with propriety bring into the case in his argument. However, the bills fail to show that the statement was gratuitous, and the fact that the learned trial judge failed to sustain the objection to it can be explained alone upon the theory that the remark was either invited or based upon the evidence. In the absence of some lawful reason, the presumption must be indulged that the court would have sustained the objection to the argument and reprimanded the counsel.

Bill No. 3 complains of the fact that the court rewrote his charge after he had submitted it to counsel for the appellant. As qualified the bill shows that this was done in response to special charges requested by the appellant. Nothing in the bill indicates that the charge read to the jury was not a proper one or that counsel for the appellant was not afforded the opportunity required by statute to examine it.

By requested charges the appellant sought to have the jury instructed that there could be no conviction of the appellant for murder unless the death of the deceased was brought about by

the knife wounds inflicted by the appellant. This position is taken upon the theory that the record is void of evidence to show that the appellant and his son, Masterson Grayson, were principal offenders.

From the testimony of one of the eye-witnesses, we take the following: About 6 o'clock in the evening, Evans, the deceased, was cleaning up the sawdust at the mill. Upon observing the witness, the deceased laid down his shovel and engaged in a conversation with him about some medicine. The two started to walk off together. The witness was a little in front of Evans. The appellant appeared, coming at a run, pushed the witness back with one hand and with a knife in the other, said to Evans: "How about a fight, old man." He simultaneously struck Evans twice with the knife which he held in his right hand. The witness said to Evans: "Run, Bill, * * * he has got a knife." Evans whirled back to where his shovel was and appellant pursued him. Evans got the shovel and struck the appellant, knocking him down. Appellant arose at once, and Evans was standing still with the shovel in his hand. Masterson Grayson, who had arrived in company with his father and who had a gun in his hand, said: "Look out! Look out! Look out!" Appellant stepped to one side and Masterson Grayson fired. The discharge took effect in the breast of Evans and killed him. The witness then said to the appellant: "Mr. Grayson, do you realize what you have done?" Appellant replied: "Yes." The witness said: "You had better get away from here and that quick." Appellant's son then said: "Let's go," and they left together.

There was evidence from which the jury could have found that the knife used was a deadly weapon. There was also evidence that the appellant returned to his home in company with his son, Masterson Grayson, at which time he said:

"We dumped the son-of-a-gun; I didn't, but Mat did."

Appellant later repeated this same statement, and in a subsequent conversation, he said:

"I did not go over there to kill Mr. Evans."

Also:

"We are going to give up to Mr. Holliday; it will be light on us."

There was testimony that the appellant and his son were seen going in the direction of the mill some hours before the homicide; that they returned toward their home and were later seen going back to the mill in company with each other; that Masterson Grayson at the time was carrying a shotgun.

Before he was assaulted by the appellant and cut with the

knife, Evans was making no demonstration. He was abruptly accosted by the appellant while his son was standing by with a gun in his hand.

On the subject of principals and principal offenders the statute reads thus:

"All persons are principals who are guilty of acting together in the commission of an offense." (Art. 65, P. C., 1925.)

"When an offense is actually committed by one or more persons, but others are present, and knowing the unlawful intent, aid by acts or encourage by words or gestures, those actually engaged in the commission of the unlawful act, * * * such persons so aiding, encouraging or keeping watch are principal offenders." (Art. 66, P. C.)

"Any person who advises or agrees to the commission of an offense and who is present when the same is committed is a principal whether he aid or not in the illegal act." (Art. 69, P. C.)

We have no doubt that the learned trial judge was justified in his refusal to instruct the jury to exculpate the appellant if the death of the deceased resulted from the gunshot wound. The conduct of the appellant and his son, as detailed by the evidence, including their concert of action at the time of the homicide, was such as to warrant the jury in concluding that the contest was prepared for and sought by mutual agreement and that the father and son were each cognizant of the unlawful intent of the other. The charge of the court contained a correct announcement of that phase of the law of principals embraced in Art. 66, P. C., 1925, namely, that those are principals who are present at the commission of an offense and knowing the unlawful intent, aid by acts or encourage by words or gestures, those actually engaged in the commission of the unlawful act. If the facts were more complex, it might have been necessary that more comprehensive instructions be embraced in the charge. However, the facts are simple and uncontroverted, and in the mind of the writer, leave no room for debate touching the joint participation of the appellant and his son in the commission of the homicide. There is no basis for a charge affirmatively telling the jury in more comprehensive terms than are used by the court, that the appellant's culpability could arise only in the event that he was aware of the unlawful intent of his son.

From what has been said it follows that in the opinion of this court, the judgment should be affirmed. It is so ordered.

*Affirmed.*